**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashlee Tanner, | No. CV-25-01274-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Top Notch Transportation LLC, et al., | |
| Defendants. | |

Plaintiff Ashlee Tanner accuses Defendants Top Notch Transportation, LLC ("Top Notch") and Adam Burkhalter (collectively, "Defendants") of failing to pay overtime, failing to pay the minimum wage, and failing to timely pay wages in violation of the Fair Labor Standards Act ("FLSA") and various Arizona statutes. Before the Court is Tanner's motion for summary judgment (Doc. 59) and Defendants' motion to withdraw counterclaims (Doc. 50). The motions are fully briefed.[1] (Docs. 51, 63, 67, 69.) For the following reasons, Defendants' motion to withdraw counterclaims is granted and Tanner's motion for summary judgment is granted in part and denied in part.

## I.    Background

Top Notch is a luxury chauffer service. (Doc. 59 at 29.) Burkhalter is the sole owner of Top Notch. (*Id.*) Tanner worked for Defendants from May 19, 2023, until February 27,

---

[1] Defendants' label their response as a combined motion for summary judgment and response to Tanner's motion for summary judgment. Defendants, however, do not ask the Cour to enter judgment in their favor on any claim. They argue only that Tanner is not entitled to summary judgment. The Court therefore does not treat this motion as a cross-motion for summary judgment but rather construes it as a response only.

2025, as a dispatch supervisor. (*Id.* at 80–81.) Defendants initially paid Tanner $1,000 per week. (*Id.* at 84.) Tanner alleges that she typically worked 84–100 hours per week and was not paid for her overtime. (*Id.* at 83.)

Accordingly, Tanner filed suit on April 16, 2025, alleging three claims. (Doc. 1.) Defendants filed an answer on June 11, 2025, with four counterclaims: conspiracy to commit trademark infringement and unfair competition, fraud, breach of fiduciary duty, and unjust enrichment. (Doc. 10 at 17–21.) Tanner then amended her complaint to include a fourth count for FLSA retaliation in response to Defendants' counterclaims. (Doc. 17 at 11–12.) Defendants amended their answer to respond to the retaliation claim. (Doc. 21.) Defendants now move to withdraw their counterclaims. (Doc. 51.) Additionally, Tanner moves for summary judgment. (Docs. 59.)

## II.    Motion to Amend

Defendants move to amend their answer and withdraw their counterclaims which Tanner opposes.[2] (Docs. 50, 51.) The decision whether to modify a scheduling order rests within the broad discretion of the Court. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "After a deadline established in a Rule 16 scheduling order expires, a party seeking to modify a deadline must satisfy Rule 16(b)(4)'s 'good cause' standard." *See id.* at 607–608. "The party seeking to continue or extend the deadlines bears the burden of proving good cause." *Mondares v. Kaiser Found. Hosp.*, No. 10-CV-2676-BTM WVG, 2011 WL 5374613, at *1 (S.D. Cal. Nov. 7, 2011). "The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *Orona v. Chase Home Fin. LLC*, No. CV-12-02689-PHX-ROS, 2014 WL 12672639, at *1 (D. Ariz. June 19, 2014). Where a party "has not been diligent in seeking to comply with a scheduling order's deadlines, good cause is not present and the inquiry should end." *Hazelwood v. United States*, No. CV-03–1641–PHX–ROS, 2006 WL 1599344, at *7 (D. Ariz. June 5, 2006) (internal quotations omitted).

---

[2] The Court addresses this issue on the terms by which the parties briefed it. The Court notes, however, that Defendants' request to withdraw their counterclaims might be better analyzed as a motion for voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(2), (c).

Only if good cause supports deviation from the scheduling order will the Court then assess the propriety of the motion for leave to amend by considering factors such as bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the complaint previously has been amended. Fed. R. Civ. P. 15(a)(2); *see Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The Court performs this analysis "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Defendants have established good cause under Rule 16(b)(4). The deadline to amend pleadings was October 31, 2025. (Doc. 37 at 1.) Defendants filed the motion to withdraw on December 14, 2025, while fact discovery was still ongoing. The fact that Defendants filed this motion while fact discovery was still ongoing reflects that they acted diligently to remove these claims. The Court finds no reason to deny Defendants' motion under Rule 15(a)(2). Defendants' motion does not seek to add claims or expand the litigation but rather seeks to remove claims and narrow the litigation. Accordingly, Tanner will not have to engage in additional discovery because of this amendment. Additionally, neither Tanner nor Defendants moved for summary judgment on Defendants' counterclaims and thus, Tanner has not had to brief those claims. Removing the counterclaims then in no way prejudices Tanner and thus Defendants are free to do so. *See Johnson*, 975 F.2d at 609 (noting that Rule 15(a) has a "liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party."); *see also Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (stating that "the crucial factor is the resulting prejudice to the opposing party").

In its discretion, the Court grants Defendants leave to amend their answer and withdraw all counterclaims.

**III.    Motion for Summary Judgment**

**A.    Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the non-moving party,

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the non-moving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quotation omitted). The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation and citation omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies. Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

**B.     Analysis**

The FLSA mandates that employers pay employees certain minimum and overtime wages and employ employees for no more than a certain number of hours each week. 29 U.S.C. § 206–07. "The FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement)." *Dyrhuag v. Tax Breaks Inc.*, No. 13-CV-1309-PHX-BSB, 2015 WL 13567067, at *5 (D. Ariz. Sep. 15, 2015). As an initial matter, Tanner and Defendants dispute (1) whether Tanner was an employee within the meaning of the FLSA and (2) whether Burkhalter was Tanner's employer within the meaning of the FLSA.

**1.     Employee Status**

Under the FLSA an employee "means any individual employed by an employer." 29 U.S.C. § 203(e)(1). To employ is to "suffer or permit to work." *Id.* at § 203(g). To distinguish employees from independent contractors for purposes of the FLSA, the Court applies the "economics realities test," which requires consideration of factors such as:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Ass., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). No single factor is dispositive. Rather, the determination depends "upon the circumstances of the whole activity." *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). Importantly, a contractual label does not determine employment status, nor does the subjective intent of the parties to a labor contract override the economic realities reflected in the factors described above. *Id.* at 755.

"Whether an individual is an employee or an independent contractor for purposes of the FLSA is a question of law." *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-cv-00824 JWS, 2015 WL 1299369, at *2 (D. Ariz. Mar. 23, 2015). But the Court can answer

- 5 -

this question on summary judgment only where the facts material to the inquiry are undisputed. *See Gillard v. Good Earth Power AZ LLC*, No. CV-17-01368-PHX-DLR, 2019 WL 1280946, at *7 (D. Ariz. Mar. 19, 2019) (finding material factual disputes precluded summary judgment on whether individuals were employees or independent contractors).

As to the first factor, the record reflects that Defendants maintained the right to control Tanner's work. "The extent of the employer's right to control the means and manner of the worker's performance is a primary factor." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 884 (9th Cir. 1980). The "'right to control' does not require continuous monitoring of employees." *Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 783 (D. Or. 2002) (internal quotations and citations omitted). Here, Defendants dictated that Tanner must answer customer phone calls immediately and respond to emails within five minutes. (Doc. 59 at 82.) It is also clear from the record that Defendants controlled the rate of pay. (*Id.* at 60.) *Romero v. Synergy Restoration LLC*, No. CV-24-01602-PHX-MTL, 2025 WL 33546, at *4 (D. Ariz. Jan. 6, 2025) (finding employer-employee relationship where employer "determined the rate and method of payment"). Thus, the degree of control indicates an employee-employer relationship.

Because Tanner was paid at a fixed weekly rate of $1,000 which was later increased to $1,250, she had no opportunity for profit or loss. (Doc. 59 at 60.) Burkhalter testified that occasionally he paid Tanner more if the business was busier than normal, for example during the Waste Management Open. (*Id.*) This underscores that Tanner's "opportunity for profit or loss appears to depend more upon the managerial skills of" Defendants than on her "own judgment and industry." *Real*, 603 F.2d at 755. Accordingly, the second factor weighs in favor of an employee-employer relationship.

Tanner made minimal investment in equipment or materials required for her work. All the equipment, such as an iPad and iPhone, was provided by Defendants. (*Id.* at 46.) There is evidence that Tanner also used her own computer. (*Id.*) But this fact does not change the calculus on this factor. *See Real*, 603 F.2d at 755 (finding that an employee's

investment in equipment was minimal in comparison with the total investment of the employer). Therefore, the third factor favors an employee-employer relationship.

Under the fourth factor, Tanner's work did not require special skill. Tanner was not required to have any special licenses or certifications for the job. Nor did Tanner "need extensive training, special technical knowledge, or highly developed skills" to perform her work. *Iontchev v. AAA Cab Services, Inc.*, 685 F. App'x 548, 550 (9th Cir. 2017). Even if there was a genuine dispute as to whether Tanner's work required special skill, this factor would not indicate Tanner was an independent contractor because Tanner did not use those skills in an independent manner. *See Murphy v. Tuality Healthcare*, 157 F. Supp. 3d 921, 927 (D. Or. 2016). Rather, she used her skills for Defendants. As Tanner did not use any special skills or use any such skills in an independent manner, this factor weighs towards finding an employee-employer relationship.

Tanner was hired for an indeterminate duration and either Tanner or Defendants could terminate the relationship at any time. (Doc. 59 at 75.) *See Dyrhaug*, 2015 WL 13567067, at *10 (finding the fact that either party could terminate the working relationship to favor an employment relationship). Tanner ultimately worked for Defendants continuously for a long period of time. The permanence factor favors an employee-employer relationship.

As to the last factor, Tanner's service was an integral part of the Defendants' business. Defendants do not dispute that Tanner's work was important to Defendants' business. (Doc. 67 at 7.) It is also independently clear that Tanner's work as a dispatcher was an integral part of Defendants' chauffeur business "rather than an independently viable enterprise." *Real*, 603 F.2d at 755. Therefore, the sixth factor favors an employee-employer relationship.

The economic reality shows that Tanner was an employee under the FLSA, not an independent contractor. Accordingly, Tanner is entitled to summary judgment on the issue of her status as an employee.

### 2. Employer Status

Tanner argues both Defendants, Top Notch and Burkhalter, were her employers. (Doc. 59 at 9–11.) Defendants assert that whether Burkhalter was Tanner's employer "is contingent on an FLSA employment relationship" and thus "rises and falls" with whether Tanner was an employee. (Doc. 67 at 7–8.)

Only "employers" are liable for FLSA violations. 29 U.S.C. § 216(b). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." § 203(d). Two or more employers may be joint employers of an employee, with each employer having individual liability for compliance with the FLSA. *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). "[T]he concept of joint employment should be defined expansively under the FLSA." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). To determine whether an entity qualifies as a joint employer, the Court examines the economic realities of the work arrangement. *See Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997). The Court considers the "circumstances of the whole activity," and specifically examines four factors: "whether the alleged employer: (1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1469–70.

Burkhalter is the sole owner, member, and statutory agent of Top Notch. (Doc. 21 at 2–3.) Burkhalter made the decision to hire Tanner and other employees. (Doc. 59 at 31–32.) Burkhalter set the operating hours of Top Notch and thus its employees. (*Id.* at 34.) Burkhalter determined the rate and method of Tanner's pay. (*Id.* at 44–45.) Defendants proffer no evidence to the contrary. When the circumstances of the whole activity are considered, the factors indicate that Burkhalter was an employer.

The economic reality again shows that Burkhalter was Tanner's employer under the FLSA. Accordingly, Tanner is entitled to summary judgment on this issue and Burkhalter may be found individually liable for any violations.

- 8 -

### 3.    Overtime Claim

"To establish a minimum-wage or overtime violation of the FLSA, Plaintiff must establish three elements: (1) she was an employee of Defendants, (2) she was covered under the FLSA, and (3) Defendants failed to pay her minimum wage or overtime wages." *Smith v. Nov. Bar N. Grill LLC*, 441 F. Supp. 3d 830, 834 (D. Ariz. 2020) (citing §§ 206(a), 207(a)). "[C]overage exists if . . . the employer is an enterprise engaged in commerce (enterprise coverage), § 203(s) (defining 'enterprise engaged in commerce' as enterprises that, inter alia, have annual gross revenue of $500,000 or greater)." *Chao*, 346 F.3d at 914.

An employee has the burden of proving that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*. However, where the employer fails to keep adequate records of the employee's hours the employee's burden is lightened. The employee must only (1) prove that she has in fact performed work for which she is owed overtime, and (2) produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. This lower standard exists to avoid penalizing an employee and rewarding an employer for the latter's statutory violations. *See id.* Once an employee establishes the amount and extent of overtime worked as a matter of just and reasonable inference, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

The first two elements are satisfied here. For the first element, as discussed above, Tanner was an employee. For the second, Tanner argues she was covered under the FLSA pursuant to enterprise coverage. (Doc. 59 at 12.) Defendants do not dispute this. (Doc. 68 at 8–10.) Furthermore, the evidence shows that Top Notch has an annual gross revenue of $500,000 or greater which satisfies the requirements for enterprise coverage. (Doc. 21 at 4–5.)

For the third element, Tanner produces evidence that she was working 7 days per week for a total of 84–100 hours per week which amounts to 44–60 hours of overtime per week. (Doc. 59 at 83–84.) For the purposes of summary judgment, Tanner seeks a reduced award of damages based on 60 hours worked per week. (*Id.* at 18.) Defendants, however, produce evidence that the current personnel who perform substantially the same work that Tanner did, do so on a part-time basis of 15 to 20 hours per week. (Doc. 67-13 at 6.) Defendants have thus come forward with evidence to negate the reasonableness of the inference to be drawn from Tanner's evidence. *See Mt. Clemens,* at 688. Accordingly, triable issues of fact remain on the amount of overtime hours that Tanner worked and the rate of pay for those hours, precluding summary judgment on this claim.

### 4. Retaliation Claim

The FLSA establishes that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation under the FLSA, a plaintiff must show (1) the plaintiff engaged in FLSA-protected conduct, or the employer erroneously believed the plaintiff engaged in such conduct; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse action. *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for the adverse employment action. *See Spata v. Smith's Food & Drug Ctrs., Inc.*, 253 F. App'x 648, 649 (9th Cir. 2007) (applying the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to FLSA retaliation claims). If the defendant provides such a reason, the burden shifts back to the plaintiff to show the proffered reason is pretextual. *Id.*

For the first element, Tanner engaged in FLSA-protected conduct when she filed this suit. Defendants do not contest this point. (Doc. 67 at 10–11.)

For the second, Tanner argues she suffered an adverse employment action when Defendants brought counterclaims against her in this suit. (Doc. 59 at 15.) Although this action by Defendants occurred after the employee-employer relationship ended, "the employment relationship need not be current." *Hollis v. R&R Restaurants, Inc.*, 159 F.4th 677, 685 (9th Cir. 2025). Additionally, "the retaliation need not take the form of an adverse employment action" but "instead covers 'adverse action' more generally." *Id.* at 685, 688 (citation omitted). Thus, some district courts in this Circuit have determined that "counterclaims can support a retaliation claim when the counterclaims are 'baseless,'" which requires a plaintiff to demonstrate that the counterclaims "were filed with a retaliatory motive and lack a reasonable basis in fact or law." *Robillard v. Opal Labs, Inc.*, 337 F. Supp. 3d 962, 972 (D. Or. 2018).

Tanner has not met her burden to show that Defendants' counterclaims have no arguable basis in fact or law. The only evidence Tanner proffers in her initial motion is that Defendants moved to withdraw the counterclaims. She contends that "[i]t is undisputed that Defendants' Counterclaims are baseless as Defendants have admitted as much in their motion to amend their Answer and Counterclaims to dismiss them in their entirety." (Doc. 59 at 15.) In reply, Tanner points to evidence in Burkhalter's deposition testimony in an attempt to demonstrate that the counterclaims are baseless. (Doc. 69 at 2–4.) This evidence, however, does not answer the relevant question of whether the counterclaims were baseless when Defendants brought them. That Defendants later, through discovery, deemed the counterclaims less than meritorious does not indisputably show that there was no basis in fact to bring them initially. Neither does what Burkhalter knew at his deposition, close in time to the motion to withdraw, indisputably show that the counterclaims were baseless. On the other hand, Defendants provide evidence that the counterclaims had an arguable basis in fact. A declaration from Burkhalter recounts the wrongdoing suspected at the time and that Tanner was one of only two employees in a position to commit such wrongdoing. (Doc. 67-13 at 5.) On this record, the Court cannot conclude that Defendants'

counterclaims were baseless when pled. Although Defendants now seek to withdraw the counterclaims, that is not equivalent to admitting that they were baseless.

Because Tanner has not carried her burden to show that Defendants' counterclaims amount to an adverse employment action, the Court's analysis ends. Tanner is not entitled to summary judgment on her retaliation claim.

**IV.    Conclusion**

Defendants have leave to amend their answer and withdraw all counterclaims. Tanner is entitled to summary judgment on the issue of the employee-employer relationship: Tanner was an employee of Defendants and Burkhalter was her employer. Triable issues of fact, however, preclude summary judgment on Tanner's overtime and retaliation claims. Accordingly,

**IT IS ORDERED** that Defendants' motion to withdraw counterclaims (Doc. 50) is **GRANTED**, and Tanner's motion for summary judgment (Doc. 59) is **GRANTED in part and DENIED in part**, as explained herein.

**IT IS FURTHER ORDERED** construing Defendants' Conforming Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 67) as Defendants' response in opposition only. The Clerk of Court is directed to terminate the motion.

**IT IS FINALLY ORDERED** that this matter shall be reassigned, by random lot, to the **Honorable David G. Campbell**. All future pleadings and papers submitted for filing shall bear the following complete case number: **CV-25-01274-PHX-DGC**.

Dated this 31st day of July, 2026.

Douglas L. Rayes
Senior United States District Judge

- 12 -